IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| EMMA JANE WEBBER, ) | |
| ) | |
| Plaintiff, ) | **CIVIL ACTION** |
| ) | |
| v. ) | No.  06-2070-MLB |
| ) | |
| CITY OF WICHITA, KANSAS, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This case comes before the court on plaintiff's motion to amend the complaint and defendants' motion for summary judgment. (Docs. 36, 39). The motions have been fully briefed and are ripe for decision. (Docs. 37, 40, 47, 48). Plaintiff's motion is denied and defendants' motion is granted for reasons herein.

**I.   FACTS**[1]

   **A. The Stop**

At approximately 1:58 a.m. on March 8, 2004, City of Wichita police officers Jarrod Menges and Roderick Miller stopped a white Cadillac for improper tags. The Cadillac was driven by Cynthia Webber and Curtis Webber was a passenger in the front seat. Menges approached the driver's side of the Cadillac while Miller approached the passenger side. Miller observed Curtis Webber shoving something

---

[1] These facts are taken almost entirely from plaintiff's response. Plaintiff's facts were not supported by any exhibits in the record. Defendants, however, failed to object to all but one of plaintiff's facts in their reply. The facts set out by plaintiff are therefore deemed uncontroverted. D. Kan. R. 56.1. Nevertheless, they are cited, in summary fashion, merely to provide background information. Otherwise, the facts are irrelevant to disposition of the case.

between his legs and then observed a napkin with a white ball in the middle. When Miller attempted to open the passenger door, Webber took off running. As Miller chased Webber into an alleyway, Miller threw his flashlight and hit Webber on his shoulder blades. Webber fell to the ground but he got back up and began running back towards the Cadillac.

As Webber passed Menges (who had followed after Miller), Menges sprayed Webber with mace. Miller tackled Webber and hit him with his left knee three times. Miller then administered a pressure point control tactic (PPCT) to the left mandibular area. Webber was able to get up and continue running. Menges then shot Webber with mace a second time. Webber struck Menges with his right arm. Menges responded by striking Webber with his large flashlight. The flashlight broke after the second or third strike. Webber was now face down on the ground and Menges administered another dose of mace. The officers were lying across Webber and attempting to move Webber's left arm behind his back. The officers gave Webber a verbal command to move his arms and then Menges struck Webber five or six times with the baton. When Webber continued to move, Menges struck his thighs and calves with the baton.

During this entire time, both officers were having trouble seeing in the dark. Miller yelled "gun" but Menges did not know why because he could not see. Webber went down to the ground and was struck again. This time he was struck in the upper body and two or three times on the back of the head. Officer Cory arrived and was able to handcuff Webber. Cory asked the officers if Webber had a weapon and they said no. Menges stated that he believed Webber was

eating dope. Cory kneeled down and told Webber to "spit it out." Cory administered pressure points on Webber's face and struck him three times. Webber spit out chewed up napkins. Cory stated that Webber was not moving or talking after this last event. When the ambulance arrived, Webber was non-responsive. Webber died shortly upon arrival to the hospital.

### B. Police Training

Prior to becoming a police officer, the officers involved in Webber's stop went through at least twenty-one weeks of training at the Wichita-Sedgwick County Law Enforcement Training Center. They trained for a minimum of 816 hours. Following the training academy and state certification, the officers received an additional eight to fourteen weeks of training in the Department's Field Training Program. After becoming law enforcement officers, they were required to perform an additional forty hours of continuing education each year.

Although there was no specific training on handcuffing non-compliant citizens, the officers are trained in various defensive tactics for using force. The officers are told to use reasonable force in dealing with non-compliant citizens. Currently, the state of Kansas does not require the officers to take a defensive tactics refresher course. Chief Williams approves all training courses that are offered by the police department and determines what to instruct based on state mandates and the needs of the department.

### C. Plaintiff's Complaint

Plaintiff, Webber's mother, filed suit against the City of Wichita, Chief of Police Norman Williams and unknown John Doe officers of the Wichita Police Department. Plaintiff asserted claims pursuant

to 42 U.S.C. § 1983 and a state law tort claim for battery. Plaintiff now seeks to amend her complaint to add the named officers. Defendants, the City of Wichita and Chief Williams, oppose plaintiff's motion and move for summary judgment and seek dismissal of all claims against them.

**II.    Summary Judgment Standards**

The rules applicable to the resolution of this case, now at the summary judgment stage, are well-known and are only briefly outlined here. Federal Rule of Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if sufficient evidence exists "so that a rational trier of fact could resolve the issue either way" and "[a]n issue is 'material' if under the substantive law it is essential to the proper disposition of the claim." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998). When confronted with a fully briefed motion for summary judgment, the court must ultimately determine "whether there is the need for a trial–whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). If so, the court cannot grant summary judgment. Prenalta Corp. v. Colo. Interstate Gas Co., 944 F.2d 677,

684 (10th Cir. 1991).[2]

**III. Analysis**

    **A. Motion to Amend**

Plaintiff has filed a motion to amend her complaint in order to substitute named officers for the unknown John Doe officers. (Doc. 36). The Federal Rules of Civil Procedure provide that a party may amend his or her pleading after a responsive pleading has been filed "only by leave of court or by written consent of the adverse party..." See Fed. R. Civ. P. 15(a); Calderon v. Kansas Dept. of Social and Rehab. Servs., 181 F.3d 1180, 1185-86 (10th Cir. 1999). Fed. R. Civ. P. 15(a) also provides that leave to amend "shall be freely given when justice so requires." In the absence of any apparent or declared reason, such as undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment, leave to amend should, as the rules require, be freely given. Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962); Frank v. U.S. West, Inc., 3 F.3d 1357, 1365 (10th Cir. 1993). Defendants specifically contend that plaintiff's motion is futile since adding the named defendants would not relate back to the date of the original complaint and therefore, plaintiff's claims against the officers would be barred by the statute of limitations. A district court is justified in denying a motion to amend as futile if the proposed amendment could not withstand a motion to dismiss or otherwise fails

---

[2] Although plaintiff makes passing reference to some of these standards in her response, her counsel appear incapable of applying them.

to state a claim. <u>Ketchum v. Cruz</u>, 961 F.2d 916, 920 (10th Cir. 1992).

The original complaint in this case was filed on February 28, 2006, on the eve of the expiration of the applicable statute of limitations. Plaintiff alleged claims against the unknown officers pursuant to 42 U.S.C. § 1983 and a battery claim under the Kansas Tort Claims Act. For plaintiff's § 1983 claims, the Kansas Supreme Court has held that the law of the state where the tort occurs controls. <u>See</u> <u>Lemons v. Lewis</u>, 963 F. Supp. 1038, 1050 (D. Kan. 1997)(citing <u>Ling v. Jan's Liquors</u>, 237 Kan. 629, 635, 703 P.2d 731, 735 (1985)). All of the acts alleged by plaintiff occurred in the state of Kansas. Accordingly, Kansas law controls.

Kansas law provides that a claim for § 1983 actions arising in Kansas is two years, under K.S.A. § 60-513(a)(4). <u>Johnson v. Johnson County Comm'n Bd.</u>, 925 F.2d 1299, 1301 (10th Cir. 1991). Plaintiff's claim for battery is also subject to a two year statute of limitations. K.S.A. § 60-513(a)(4). "Claims arising out of police actions toward a criminal suspect, such as arrest, interrogation, or search and seizure, are presumed to have accrued when the actions actually occur." <u>Id.</u> Webber's death occurred on March 8, 2004. Accordingly, plaintiff's claims against the named officers would be barred unless plaintiff's amended complaint could relate back to the date of the original complaint.

Rule 15(c) provides that an amended pleading will relate back to the date of the original pleading when

> (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided

> by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Fed. R. Civ. P. 15(c).

Defendants assert the adding of the named officers amounts to adding a new party and does not satisfy the requirements of Rule 15(c) because plaintiff's omission of the names was not due to a mistake concerning the identity of the officers.  The court agrees.  For the reasons and authority cited by defendants (which plaintiff does not rebut or even mention in her response) plaintiff's lack of knowledge of the officers' identity is not a mistake within the meaning of Rule 15(c).  Garrett v. Fleming, 362 F.3d 692, 697 (10th Cir. 2004). Accordingly, plaintiff's substitution of the named officers for John Does would amount to adding a new party and thus would not relate back to the date of the original complaint.  Id.  Since plaintiff has not complied with Rule 15(c), the addition of the named officers would be futile because the claims against them would not withstand a motion to dismiss.

Plaintiff's motion to amend the complaint is denied.  (Doc. 36).

**B.   Excessive Force, False Arrest and Denial of Medical Care**

Defendants have moved for summary judgment on plaintiff's claims of excessive force, false arrest and denial of medical care under the Fourth and Fifth Amendments.[3]  (Doc. 39).  Regardless of whether the

---

[3] Defendants assert that plaintiff cannot state a Fifth Amendment claim against them for excessive force because they are not federal actors.  (Doc. 40 at 8).  While defendants may have stated the law correctly as it pertains to a procedural due process claim,

facts state a constitutional deprivation by the individual officers[4], Chief Williams can only be liable under § 1983 for his own culpable involvement in the violation of Webber's constitutional rights. To establish supervisor liability under § 1983, "the plaintiff must establish a deliberate, intentional act by the supervisor to violate constitutional rights. In short, the supervisor must be personally involved in the constitutional violation, and a sufficient causal connection must exist between the supervisor and the constitutional violation." Serna v. Colorado Dept. of Corrections, 455 F.3d 1146, 1151 (10th Cir. 2006)(internal citations omitted).

"Because mere negligence is not enough to hold a supervisor liable under § 1983, a plaintiff must establish that the supervisor acted knowingly or with deliberate indifference that a constitutional violation would occur." Id. Plaintiff has failed to establish supervisor liability with respect to Chief Williams. The record is completely void of any facts that would demonstrate that Williams personally participated in Webber's arrest or acted knowingly or with deliberate indifference to individuals' constitutional rights. "[T]here is no concept of strict supervisor liability under § 1983." Jenkins v. Wood, 81 F.3d 988, 994 (10th Cir. 1996).

In order to hold the City of Wichita responsible for any alleged deprivation of rights by its employees, plaintiff must establish that

---

plaintiff's claim is a substantive due process claim and may be brought against state actors. See Christiansen v. City of Tulsa, 332 F.3d 1270, 1278-79 (10th Cir. 2003).

[4] For the purpose of this motion, defendants do not challenge plaintiff's assertion that the actions of the officers violated Webber's constitutional rights. (Doc. 48 at 4).

an official custom or policy caused the constitutional violation. Myers v. Oklahoma County Bd. of County Com'rs, 151 F.3d 1313, 1320 (10th Cir. 1998)(citing Monell v. Dep't of Soc. Serv., 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed.2d 611 (1978)). Here, plaintiff has not established that the City maintained a policy or custom that caused Webber's alleged constitutional deprivations.

Accordingly, defendants' motion for summary judgment on plaintiff's § 1983 claims for excessive force, false arrest and failure to provide medical care is granted.

### C.   Failure to Train

Plaintiff also asserts a section 1983 claim against the City of Wichita for failing to properly train its police officers. Plaintiff argues that because defendant did not have a policy or training specifically regarding the treatment of citizens who are resisting being handcuffed, the result is deliberate indifference to Webber's Fourth Amendment right. Municipal liability under section 1983 based on training arises "only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality." City of Canton v. Harris, 489 U.S. 378, 388 (1989). Further, a plaintiff must not only prove that the training program was insufficient but also that the failure to train is the cause in fact of resulting harm. Id. at 391. Again, plaintiff's section 1983 claims against the City must fail.

Plaintiff has not shown that any failure to train the officers regarding handcuffing non-compliant citizens reflects a deliberate or conscious decision by the City. Moreover, plaintiff has failed to submit any facts that would establish that the training program was

-9-

insufficient or that any failure to train was the cause of Webber's death. Plaintiff does not controvert that the City's training program is in compliance with state regulations and all officers have finished all training that is required by the state.

Defendants' motion for summary judgment on plaintiff's section 1983 claim for failure to train is granted.

**D.  State Law Claims**

Finally, plaintiff asserts a state law battery claim against defendants. In order to bring a tort claim against a municipality or its employees, plaintiff must first provide notice in accordance with K.S.A. § 12-105b(d). <u>Midwestern Motor Coach Co. v. Blattner</u>, 2003 WL 21105083, *4 (D. Kan. Apr.10, 2003); <u>Miller v. Brungardt</u>, 916 F. Supp. 1096, 1099 (D. Kan. 1996). Plaintiff has failed to establish that she provided notice to the City prior to filing suit. Plaintiff has not mentioned K.S.A. § 12-105b(d) in her response and apparently was not aware of its existence.

Defendants' motion for summary judgment on plaintiff's battery claim is therefore granted.

**IV.  Conclusion**

Plaintiff's motion to amend (Doc. 36) is denied. Defendants' motion for summary judgment (Doc. 39) is granted. The clerk is ordered to enter judgment pursuant to Federal Rule of Civil Procedure 58.

A motion for reconsideration of this order pursuant to this court's Rule 7.3 is not encouraged. The standards governing motions to reconsider are well established. A motion to reconsider is appropriate where the court has obviously misapprehended a party's

position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence.  Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate. Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992).  Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by this court in Comeau v. Rupp.  The response to any motion for reconsideration shall not exceed three pages.  No reply shall be filed.

   IT IS SO ORDERED.

   Dated this   8th   day of November 2007, at Wichita, Kansas.


                                    s/ Monti Belot
                                    Monti L. Belot
                                    UNITED STATES DISTRICT JUDGE